IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISON

HENRY ERIC ROUTON, :
:
         Plaintiff, :
: Civil Action No. 1:23cv224
v. :
:
ARMOR CORRECTIONAL HEALTH :
SERVICES, INC., et. al., :
:
         Defendants. :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HARRIS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant, Dr. Harris, by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits this Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Complaint. Plaintiff's claims against Dr. Harris are subject to dismissal on the following bases: (1) plaintiff's federal and state claims are barred by the applicable statutes of limitation; (2) plaintiff's constitutional claim is barred by the doctrine of qualified immunity; and (3) plaintiff's state claims are by law limited to medical malpractice and he has failed to satisfy the Virginia Medical Malpractice Act's ("VMMA") requirement for expert certification.

    I.     **PROCEDURAL BACKGROUND**

Plaintiff originally filed an action against Dr. Harris and others on March 30, 2020, titled *Routon v. Armor Correctional Health Service, Inc., et al.*, in the United States District Court for the Western District of Virginia, which was transferred on April 1, 2020, to this Court, and docketed at Case No. 1:20-cv-00362-LO-JFA. On July 2, 2020, plaintiff filed a Notice of Voluntary Dismissal (Doc. 11), which the Court granted on July 9, 2020, and pursuant to Fed R. Civ. P. 41(a)(1), the Court dismissed the action without prejudice (Doc. 12).

On October 25, 2022, plaintiff filed an action against Dr. Harris and others in the Western District, titled *Routon v. Armor Correctional Health Services Inc., et al*., which was transferred to this Court on December 7, 2022, and docketed at Case No. 1:22-c-v-01396-LMB-JFA (Doc.1). On December 8, 2022, the Court dismissed plaintiff's action without prejudice and ordered that if he chose to pursue his claims, he must file within 30 days one complaint for his medical treatment claim and another for his sentence calculation claim. (Doc. 6). On January 4, 2023, the Court granted plaintiff's Motion for Enlargement of Time, and allowed him 30 days, or until February 3, 2023, to comply.

On February 15, 2023, plaintiff filed the above-captioned matter against Dr. Harris and others related to his medical treatment claim, which was docketed at Case No. 1:23-cv-00224-LMB-LRV (Doc. 1). By Order dated June 6, 2023, the Court granted Dr. Harris' Motion for Extension of Time, allowing him 21 days to file a responsive pleading. (Doc. 17).

## II. FACTUAL BACKGROUND

In this matter, plaintiff asserts §1983, ADA, and related state court claims against medical providers, including Dr. Harris, and prison and Va. Dept. of Corrections' officials, related to their denying him treatment for Hepatitis C with direct-acting antivirals ("DAAs") prior to his discharge from the Deerfield Correctional Center ("DCC").

Dr. Harris was a physician at DCC during plaintiff's incarceration. Plaintiff alleges that a June 12, 2019, lab result indicated he was positive for Hepatitis C. Complaint, ¶ 16. He alleges further that on October 28, 2019, he underwent a Fibroscan, and Dr. Harris informed him on that date that the result was 4.0, within "normal limits," and that he would not be referred for treatment. *Id*., ¶¶ 44-45. Plaintiff maintains that on January 16, 2020, during a chronic care clinic follow-up, Dr. Harris documented that plaintiff was "doing well. Clinically stable. No ailments noted from

Hep C. No nausea, vomiting, jaundice… no new symptoms, asymptomatic physically. Mentally fixated on wanting to be treated now," and that plaintiff "desires treatment before he goes home." *Id*., ¶¶ 57-58. According to plaintiff, Dr. Harris also informed him that day that under the VDOC Guidelines, "he would not be treated with DAA drugs until his liver more significantly deteriorated resulting in a future Fibroscan reading that is great than 7.0." *Id*., ¶ 63.

### III. ARGUMENT

#### A. Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b) (6); *Iqbal v. Ashcroft, 556 U.S. 662* (2009); *Adcock v. Freightliner LLC,* 550 F.3d 369, 374 (4th Cir. 2008). Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b) (6) purposes. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255-256 (4th Cir. 2009) (relying on *Iqbal* and *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007))*. Nor should the court consider "unwarranted inferences, unreasonable conclusions, or arguments." *Id*. (quoting *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n. 26 (4th Cir.209)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555 (internal citations omitted). "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Relying on *Iqbal* and *Twombly,* the Fourth Circuit has stated that a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" The "complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Nemet Chevrolet, 591 F.3d at 256* (citations omitted). Thus, the complaint must plead sufficient facts to allow a court, drawing on "'judicial experience and common sense,' to infer "'more than the mere possibility of misconduct.'" *Id.*

### B. Plaintiff's Federal and State Claims are Barred by the Statutes of Limitation

#### 1. Plaintiff had Two Years to File his § 1983 Claim

Plaintiff's Eighth Amendment claim against Dr. Harris alleging deliberate indifference and brought pursuant to § 1983, is barred by the applicable two-year statute of limitations. Because § 1983 does not provide its own statute of limitations, courts borrow the personal injury statute of limitations from the relevant state. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 476 (E.D.Va. 1999). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery, … shall be brought within two years after the cause of action accrues.").

Plaintiff was therefore required to bring his § 1983 claim within two years of its accrual. A claim accrues when the plaintiff becomes aware of his or her injury or is put on notice to make a reasonable inquiry if a claim exists. *See United States v. Kubrick*, 444 U.S. 11, 123 (1979); *Nasim*, 64 F.3d at 995. Here, plaintiff alleges that Dr. Harris last saw him on January 16, 2020, and on that date informed plaintiff that he was not eligible for DAA treatment under the Guidelines and refused him treatment. That plaintiff's claim accrued at that time is evidenced by the fact that

he filed a complaint against Dr. Harris in March 2020, which he voluntarily dismissed. Plaintiff was thus required to file his § 1983 claim on or before January 16, 2022. However, he did not file his Complaint in this matter until February 15, 2023, more than two years after his claim accrued.

Plaintiff's action is not saved by the statute of limitations' having been tolled. First, "[g]enerally, 'the statute of limitations is not tolled by bringing an action that later is dismissed voluntarily under Rule 41(a).'" *Neal v. Xerox Corp.*, 991 F. Supp. 494, 498 (E.D.Va. 1998) (quoting Charles A. Wright & Arthur R. Miller, 9 Federal Practice and Procedure § 2367 (1995)). *See also Quinn v. Watson*, 145 Fed. Appx. 799, 800 n.* (4th Cir. 2005)) (in EEOC matter noting that "[i]n instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not "toll" or suspend the ninety-day limitations period.")

Second, Virginia's tolling provision related to voluntary nonsuits does not save plaintiff's action. Virginia Code § 8.01-229(E)(3) provides, in relevant part, that:

> If a plaintiff suffers a voluntary nonsuit … the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date he suffers the nonsuit, or within the original period of limitation, whichever period is longer. This tolling provision shall apply irrespective of whether the action is originally filed in a federal or state court and recommenced in any court.

Va. Code § 8.01-229(E)(3).

In *Scoggins v. Douglas*, 760 F.2d 535 (4th Cir. 1985), the plaintiff raised § 1983 and Fourteenth Amendment claims of racial discrimination against his employer. The Fourth Circuit affirmed the district court's dismissal of the action as untimely, "[a]fter finding that plaintiff's action was barred by Virginia's two-year statute of limitations for personal injury actions, and that the nonsuit provisions of Va. Code § 8.01-229(E)(3) applied." *Id*. at 536. The Court found that under the tolling provision, the plaintiff was required to have recommenced his action within six months following the voluntary dismissal or within the original two-year limitations period.

Failing to accomplish either, the tolling provision did not save his action. In so finding, the Court rejected the plaintiff's argument that because his voluntary dismissal was taken under Fed. R. Civ. P. 41(a)(1), the Virginia nonsuit rule did not apply, and the two-year limitations period was simply tolled.

The same result follows here. Plaintiff had two years to file his § 1983 claim in federal court, and the Virginia non-suit statute, applied to his voluntary dismissal, does not save his claim.

### 2. Plaintiff Had One Year to File his ADA Claim

The ADA does not contain a statute of limitations. *See Thorne v. Hale*, No. 1:08CV601 (JCC), 2009 U.S. Dist. LEXIS 25938 (E.D. Va. Mar. 26, 2009). Federal courts thus "'borrow the state statute of limitations that applies to the most analogous state-law claim.'" *Jamison v. Kassa*, No. 3:22cv552, 2023 U.S. Dist. LEXIS 81268, *6 (E.D.Va. May 9, 2023) (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (citations omitted)). "The United States Court of Appeals for the Fourth Circuit has held that generally, the one-year statute of limitations in the VRPDA applies to ADA claims in Virginia." *Id*. Plaintiff therefore had one year from the accrual of his ADA claim to file suit, or by January 16, 2021. His February 15, 2023, filing was untimely.

Plaintiff neither satisfied the one-year statute, nor does his voluntary dismissal of his initial complaint toll the statute for the ADA claim. *See Little v. N.C. DOJ*, NO. 3:22-CV-029-DCK, 2023 U.S. Dist. LEXIS 31600 (W.D.N.C. Feb. 27, 2023) (holding that plaintiff's voluntary dismissal of prior action does not toll the statute of limitations for claims brought under Title VII or the ADA).

*Routon v. Armor, et al.*　　　Case No. 1:23cv224　　　PENDER & COWARD, P.C.
WWW.PENDERCOWARD.COM

Page **6** of **14**

### 3. Plaintiff Had One Year to File his State Claims

Plaintiff's personal injury claims based on Virginia law are also time-barred. Virginia requires an inmate confined in a state or local correctional facility to bring a personal action relating to the conditions of his confinement within a year after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later. Va. Code §8.01-243.2. *See Bing v. Haywood*, 283 Va. 381, 385, 722 S.E.2d 244, 246 (2012); *Billups v Carter*, 268 Va. 701, 604 S.E.2d 414 (2004). The Virginia Supreme Court has held that this limitation period applies even if a "plaintiff is no longer incarcerated at the time she files her action relating to conditions of her confinement." *Lucas v. Woody*, 287 Va. 354, 361, 756 S.E.2d 447, 450 (2014). Thus, the statute applies to plaintiff as a former DCC inmate.

Based on the Virginia Supreme Court's decisions, this Court has consistently dismissed inmate personal injury actions as time-barred under § 8.01-243.2. For instance, in *Gemaehlich v. Johnson*, No. 7:12cv00263, 2013 U.S. Dist. LEXIS 20147 (W.D.Va. Nov. 21, 2013), aff'd, 599 Fed. Appx. 473 (4th Cir. 2014) (unpublished) (per curiam), the plaintiff, a former pretrial detainee, raised state law assault and battery claims along with his federal claims arising from a use of force incident. The district court dismissed the state law claims brought almost seven months after § 8.01-243.2's one-year limitations period as time-barred. The Fourth Circuit affirmed. Likewise, in *Harris v. Commonwealth*, No. 3:07CV701, 2008 U.S. Dist. LEXIS 33834 (E.D.Va. Apr. 23, 2008), this Court dismissed state law claims brought by a pretrial detainee arising from an altercation with guards for assault and battery, grossly negligent hiring and retention, and gross negligence. Where the plaintiff filed his complaint several months after the one-year limitations period ran, his state law claims were held time-barred under § 8.01-243.2. *See also Cashion v. Jacklee*, No. 5:17-CV-00004, 2017 U.S. Dist. LEXIS 185749 (W.D.Va. Nov. 8, 2017) (dismissing state law claim related

*Routon v. Armor, et al.*  Case No. 1:23cv224  PENDER & COWARD, P.C.
WWW.PENDERCOWARD.COM

Page **7** of **14**

to regional jail's refusal to provide antipsychotic medication brought one and one-half months late); *Rivera v. D.O.C. Health Serv. Dir.*, No. 7:15CV00205, 2016 U.S. Dist. LEXIS 128564 (W.D.Va. Sept. 21, 2016) (dismissing state law claims of negligence, intentional infliction of emotional distress, and abuse of process related to provision of medical care brought over a year after the one-year limitation period).

Here, plaintiff alleges that Dr. Harris last saw him and denied his request for DAA medication on January 16, 2020. Complaint, ¶ 63. Under Virginia law, plaintiff's causes of action against Dr. Harris for negligence, gross negligence, medical malfeasance, breach of contract, and intentional infliction of emotional distress accrued on January 16, 2021. *See* Va. Code § 8.01-230 (establishing that in Virginia the statute of limitations begins running "from the date the injury is sustained in the case of injury to the person or damage to property."). Pursuant to *Lucas v. Woody*, plaintiff had until January 16, 2021, to file his state claims. Plaintiff, however, did not file his state claims until more than a year after the limitations period expired. As addressed above, the statute of limitations was not tolled. Plaintiff's state law claims must be dismissed as untimely.

**C. Plaintiff's Constitutional Claim is Barred by the Doctrine of Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 781 (2011) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendant's conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. *Saucier,* 533 U.S. at 206. If the Court determines that

the facts alleged, taken in the light most favorable to the plaintiff, do not show that the officer's conduct violated a constitutional right, the defendant is entitled to summary judgment without further discussion of qualified immunity. *Id.* at 201. The Supreme Court holds that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, a court can "'skip ahead to the question whether the law clearly established that [defendants'] conduct was unlawful in the circumstances of the case.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Thus, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). In analyzing qualified immunity, the court must identify, "at the appropriate level of specificity," the right that the plaintiff asserts was infringed by the challenged conduct. *Wilson v. Layne,* 526 U.S. 603, 615 (1999); *see also Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir. 1996). The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). *See White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (per curiam); *City and Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 n. 3 (2015). Thus, whether a right is clearly established must be analyzed "in

light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2016) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 1998 (2004) (per curiam) (internal quotation marks omitted).

The Supreme Court "has reiterated that for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Adams v. Ferguson*, 884 F.3d 219 , 230 (4th Cir. 2018) (emphasis in original) (reversing denial of qualified immunity to Virginia's behavioral health commissioner) (citing *Taylor v. Barkes*, 125 S.Ct. 2042, 2044 (2015) (internal citations omitted)).In determining whether the law was clearly established at the time of the alleged constitutional violation, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

"[I]n order to defeat a defendant's claim for qualified immunity, a plaintiff must show: (1) a violation of a constitutional right, which in the case of alleged deliberate indifference to serious medical needs requires a showing that (A) the alleged deprivation was sufficiently serious (the objective prong) and (B) prison officials acted with deliberate indifference (the subjective prong), which in turn requires a showing that the prison official (i) had actual knowledge of the risk of harm and (ii) recognized that his actions were insufficient to mitigate that risk of harm; and (2) that the constitutional right was clearly established at the time of the defendant's actions. If a plaintiff fails to satisfy either prong of the qualified-immunity test, the defendant is entitled to qualified immunity." *Pfaller v. Amonette*, 55 F.4th 436, 448 (4th Cir. 2022),

In *Pfaller,* the Fourth Circuit determined that a prison physician, who did not follow the VDOC Hepatitis C Guidelines, by failing to refer the plaintiff for further screening or treatment based on his scores, was not entitled to qualified immunity. The Court determined that the plaintiff

had raised a genuine issue of material fact as to an Eighth Amendment violation: "[I]t is undisputed that Dr. Wang knew Pfaller's blood results fell right near the line of warranting further screening. Yet, by his own account, he failed to check his guess about their meaning against the Guidelines, despite knowing the increasing risk of liver disease that higher scores denoted." *Id*. at 450. The Court also found that the physician "was on notice [that] failing to adequately respond to [the plaintiff's] signs of severe liver disease" could also be constitutionally deficient. *Id*. at 454. "As Pfaller's treating physician, Dr. Wang was on notice at all relevant times—late 2015 through 2018—that he could not choose to delay or withhold treatment from Pfaller when he knew it was medically necessary and was, in fact, *mandated* by the very Guidelines he operated under." *Id.* at 453 (emphasis in original).

Here, plaintiff's claim against Dr. Harris is the inverse of the plaintiff's claim against the physician in *Pfaller*. Plaintiff alleges that he had the right to treatment with DAAs and that by following the Guidelines based on plaintiff's Fibroscan score, Dr. Harris was deliberately indifferent and violated plaintiff's constitutional rights. In other words, the only allegation against Dr. Harris is that he abided by the Guidelines. Plaintiff admits that his Fibroscan score was 4.0 and that Dr. Harris informed him that under the Guidelines that it would have to be 7.0 for a treatment referral. Complaint, ¶¶ 45, 63. Plaintiff admits that he was followed in the chronic care clinic for Hepatitis C. Id., ¶¶ 57. Plaintiff also admits he did not currently have a diagnosis of fibrosis, cirrhosis, liver cancer, or liver failure. *Id*., ¶ 30. Under *Pfaller*, plaintiff cannot establish that Dr. Harris had knowledge of a risk of harm, or that a reasonable physician in Dr. Harris's position would have known that he was violating plaintiff's constitutional rights by adhering to the Guidelines.

### D. Plaintiff's State Law Claims are Barred by the Virginia Medical Malpractice Act

Assuming for argument's sake that plaintiff's state claims are not barred by the statute of limitations, he cannot proceed with them as a matter of law under the VMMA, Va. Code Ann. § 8.01-581.1, et seq.

In Virginia, any personal injury action against a physician must be brought as a medical malpractice action. Malpractice is defined in Va. Code Ann. § 8.01-581.1 as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Health care, also defined in Va. Code Ann. § 8.01-581.1, means "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." Thus, plaintiff's state law claims against Dr. Harris of negligence, gross negligence, breach of contract, medical malfeasance, and intentional infliction of emotional distress all fall within the statutory definition of "medical malpractice."

The VMMA also imposes requirements for bringing a malpractice action, and provides, in pertinent part, that:

> Every motion for judgment, counter claim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant, or requests a defendant to accept service of process, shall be deemed a certification that the plaintiff has obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to subsection A of § 8.01-581.20 a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.

Va. Code § 8.01-20.1

In addition, "[u]pon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested or affirms that the plaintiff did not need to obtain a certifying expert witness opinion." *Id*. Pursuant to the statute, and by letter dated June 14, 2023, counsel for Dr. Harris requested a certifying expert opinion from plaintiff. *See* Ex. 1. Plaintiff has failed to comply with the request.

Section 8.01-20.1 provides further that, "[i]f the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff requested service of process on a defendant as required under this section, the court shall impose sanctions according to the provisions of § 8.01-271.1 and may dismiss the case with prejudice." In the absence of the required expert certification, plaintiff's medical malpractice claim against Dr. Harris is subject to dismissal.

### IV. CONCLUSION

For these reasons, defendant Dr. Harris respectfully requests this Court to dismiss plaintiff's Complaint, with prejudice.

DR. HARRIS

By: _____/s/_____
Of Counsel

Jeff W. Rosen, Esq. VSB No. 22689
Lisa Ehrich, Esq. VSB No. 32205
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone: (757) 490-6253
Fax:     (757) 490-6253
jrosen@pendercoward.com
lehrih@pendercoward.com
*Counsel for Harris*

# CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June 2023, I will electronically file the foregoing ***Memorandum of Law in Support of Defendant Harris' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*** with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

Margaret Hoehl O'Shea, Esq. (VSB #66611)
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Phone: (804) 225-2206
Fax:    (804) 786-4239
moshea@oag.state.va.us
*Counsel for Brennan, Dillman, Herrick, Walters & Williams*

Grace Morse-McNelis, Esq. (VSB #75957)
Sands Anderson PC
1111 E Main Street
Bank of America Center Suite 2400
P O Box 1998
Richmond, VA 23218-1998
Phone: (804) 783-7233
Fax:    (804) 783-7291
gmorsemcnelis@sandsanderson.com
*Counsel for Schnur*

I hereby certify that I will mail the foregoing document by U.S. Mail to the following non-filing user:

Henry Eric Routon  #0005146
Western Virginia Regional Jail
5885 W. River Road
Salem, VA 24153
*Pro Se*

                                                /s/
                                      Jeff W. Rosen, Esq., VSB #22689
PENDER & COWARD, P.C.
222 Central Park Avenue
Virginia Beach, VA 23462
Phone/Fax: (757) 490-6253
jrosen@pendercoward.com
*Counsel for Harris*

*Routon v. Armor, et al.*   Case No. 1:23cv224   PENDER & COWARD, P.C.
WWW.PENDERCOWARD.COM
Page **14** of **14**