# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
**(Alexandria Division)**

| | |
|---|---|
| HENRY ERIC ROUTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case No. 1:23cv224<br>)<br>ARMOR CORRECTIONAL )<br>HEALTH SERVICES, INC., et al. )<br>)<br>Defendants. ) | |

## DEFENDANTS DR. ERIC YANCEY AND CANDACE DUCK-TRIPLETT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

COME NOW Defendants Eric Yancey, MD (identified by Plaintiff as "Yancey"), and Candace Duck-Triplett, LPN (identified by Plaintiff as "Tripplett") (collectively "these Defendants"), by counsel, for their Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint state as follows:

### I.   INTRODUCTION

Plaintiff originally filed suit against Dr. Yancey, Ms. Duck-Triplett, and others on October 25, 2022, captioned *Routon v. Armor Correctional Health Service, Inc.*, *et al.*, in the United States District Court for the Western District of Virginia, which was transferred on December 7, 2022, to this Court, and docketed as Case No. 1:22-cv-01396.  Dkt. Nos. 1, 5.  On December 8, 2022, the Court entered an Order dismissing the matter without prejudice, and ordering Plaintiff to re-file within 30 days if he chose to pursue his claims.  Dkt. No. 6.

On February 15, 2023, Plaintiff filed the above-captioned matter related to allegedly improper medical treatment.  The matter was docketed as Case No. 1:23-cv-00224 in this Court.

1

ECF No. 1. On July 6, 2023, Dr. Yancey and Ms. Duck-Triplett filed a Motion for Extension of Time to File their Answer. ECF No. 30. By Order dated June 7, 2023, the Court granted their Motion for Extension of Time, allowing them until July 20, 2023 to file responsive pleadings. ECF No. 31. The following Motion to Dismiss and Memorandum in Support follow.

## II.   BACKGROUND

Plaintiff asserts §1983, Americans with Disabilities Act ("ADA"), and related state law claims against medical providers, including Dr. Yancey and Ms. Duck-Triplett, and prison and Virginia Department of Corrections officials, related to an alleged denial of treatment for Hepatitis C with direct-acting antivirals ("DAAs") before his discharge from the Deerfield Correctional Center ("DCC") in 2019/2020.

Plaintiff alleges Dr. Yancey and Ms. Duck-Triplett were clinicians at DCC. *Id.* Plaintiff claims that his June 12, 2019 lab results indicated he was positive for Hepatitis C. *Id.* at ¶ 16. He further alleges that on October 28, 2019, he underwent a FibroScan,[1] and Dr. Harris informed Mr. Routon that the result was 4.0, which was within "normal limits," so Dr. Harris would not refer Mr. Routon for treatment. *Id.* at ¶¶ 44-45. Plaintiff asserts on January 16, 2020, during a chronic care clinic follow-up, Dr. Harris documented that Mr. Routon was "doing well. Clinically stable. No ailments noted from Hep C. No nausea, vomiting, jaundice . . . no new symptoms, asymptomatic physically. Mentally fixated on wanting to be treated now," and that Plaintiff "desires treatment before he goes home." *Id.* at ¶¶ 57-58.

According to Plaintiff, Dr. Harris also informed him that same day that under the DCC Guidelines, "he would not be treated with DAA drugs until his liver more significantly deteriorated resulting in a future FibroScan reading greater than 7.0." *Id.* at ¶ 63. Mr. Routon alleges Dr.

---

[1] A FibroScan is a noninvasive diagnostic ultrasound-based device that measures liver scarring, or fibrosis, caused by different liver diseases.

2

Yancey and Ms. Duck-Triplett followed, enforced, and/or created these DCC Guidelines. *Id.* at ¶¶ 80-82. Mr. Routon further alleges that (1) Dr. Yancey's refusal to treat and/or authorize treatment for his chronic condition constitutes deliberate indifference; (2) Plaintiff's exclusion from the pharmacy program for DAA drugs was discriminatory in violation of the ADA; and (3) the DCC Guidelines violated his Eight Amendment rights. *Id.* at ¶¶ 74, 79, 84-85, 88, 96-97, 99, 101. Finally, Plaintiff argues that Dr. Yancey and Ms. Duck-Triplett's refusal to properly treat him constitutes negligence, gross negligence, breach of contract, medical malpractice, and intentional infliction of mental and emotional distress. *Id.* at ¶¶ 101.

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts which, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Further, the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Regarding a *pro se* litigant, the Court must liberally construe the allegations contained in the pleadings. *Ericson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[p]rinciples requiring

3

generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the complaint to set forth a claim cognizable under Federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Thus, to survive this Motion, Plaintiff's Complaint must make sufficient factual allegations to support a cognizable cause of action. *Weller,* 901 F. 2d 387, 391 (4th Cir. 1990). Plaintiff must present sufficient nonconclusory factual allegations supporting a reasonable inference that Dr. Yancey and Ms. Duck-Triplett are liable for an alleged unlawful act or omission. *See Francis v. Giacomelli*, 588 F.3d 186, 196–97 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678–79; *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992)).

## IV.  ARGUMENT

Plaintiff's claims against Dr. Yancey and Ms. Duck-Triplett are all subject to dismissal on the following bases: (1) Plaintiff's federal and state claims are barred by the applicable statutes of limitation; (2) Plaintiff's constitutional claims are barred by the doctrine of qualified immunity; (3) for the sake of argument, Mr. Routon's claims also do not amount to deliberate indifference; (4) to the extent the Plaintiff's claims assert supervisory liability, they also fail to allege this cause of action; and (5) Plaintiff's state claims are by law limited to medical malpractice and he has failed to satisfy the Virginia Medical Malpractice Act's ("VMMA") requirement for expert certification.

### A.  Plaintiff's Federal and State Claims are Barred by the Statutes of Limitation.

#### 1.  Plaintiff had Two Years to File his § 1983 Claim.

Plaintiff's Eighth Amendment claims against Dr. Yancey and Ms. Duck-Triplett alleging deliberate indifference and brought pursuant to § 1983, are barred by the applicable two-year

4

statute of limitations. Because § 1983 does not provide its own statute of limitations, courts borrow the personal injury statute of limitations from the relevant state. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 476 (E.D. VA. 1999). Virginia applies a two-year statute of limitations to personal injury claims. *See* Va. Code § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues.").

Plaintiff was required to bring his § 1983 claim within two years of its accrual. A claim accrues when the plaintiff becomes aware of his injury or is on notice to make a reasonable inquiry if a claim exists. *See United States v. Kubrick*, 444 U.S. 11, 123 (1979); *Nasim*, 64 F.3d at 995. Here, Plaintiff alleges Dr. Harris last saw him on January 16, 2020, at which time Dr. Harris informed Plaintiff he was not eligible for DAA treatment under the DCC Guidelines and allegedly refused to provide any treatment. ECF No. 1 at ¶¶ 57-58. Plaintiff makes no reference to the timing of any actions or inactions by Dr. Yancey and/or Ms. Duck-Triplett.

For purposes of statute of limitations analysis, Plaintiff's claim accrued on January 16, 2020. Mr. Routon did not file his Complaint against Dr. Yancey and Duck-Triplett until October 2022, well after the two-year statute expired. Dkt. No. 1.

On December 8, 2022, the Court entered an Order dismissing the matter without prejudice. Dkt. No. 6. Mr. Routon had to re-file his § 1983 claim by February 3, 2023, but did not do so until February 15, 2023, well after expiration of both the two-year statute of limitations and after expiration of the Court's imposed deadline. Therefore, these claims are time barred and must be dismissed.

    **2.**    **Plaintiff Had One Year to File his ADA Claim.**

The ADA does not contain a statute of limitations. *See Thorne v. Hale*, 2009 U.S. Dist. LEXIS 25938 (E.D. Va. Mar. 26, 2009). Federal Courts, like with § 1983 claims, "'borrow the state statute of limitations that applies to the most analogous state-law claim.'" *Jamison v. Kassa*, 2023 U.S. Dist. LEXIS 81268, *6 (E.D. VA. May 9, 2023) (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (citations omitted)). "The United States Court of Appeals for the Fourth Circuit has held that generally, the one-year statute of limitations in the VRPDA [Virginia Residential Property Disclosure Act] applies to ADA claims in Virginia." *Id*. Plaintiff therefore had one year from the accrual of his ADA claim to file suit, or by January 16, 2021. Mr. Routon's October 25, 2022 and February 15, 2023, filings were both untimely and must be dismissed.

### 3.     **Plaintiff Had One Year to File his State Law Claims.**

Many of Plaintiff's claims sound in personal injury based on Virginia law, which also are time-barred. Virginia requires an inmate confined in a state or local correctional facility to bring a personal action relating to the conditions of his confinement within a year after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later. Va. Code Ann. § 8.01-243.2; *See Bing v. Haywood*, 283 Va. 381, 385, 722 S.E.2d 244, 246 (2012); *Billups v Carter*, 268 Va. 701, 604 S.E.2d 414 (2004). The Virginia Supreme Court holds this limitation period applies even if a "plaintiff is no longer incarcerated at the time she files her action relating to conditions of her confinement." *Lucas v. Woody*, 287 Va. 354, 361, 756 S.E.2d 447, 450 (2014). Thus, the statute applies to Mr. Routon as a former DCC inmate.

Based on the Virginia Supreme Court's current decisions, this Court has consistently dismissed inmate personal injury actions as time-barred under § 8.01-243.2. For instance, in *Gemaehlich v. Johnson*, the plaintiff, a former pretrial detainee, raised state law assault and battery

6

claims along with his federal claims arising from a use of force incident. 2013 U.S. Dist. LEXIS 20147 (W.D. Va. Nov. 21, 2013), aff'd, 599 Fed. Appx. 473 (4th Cir. 2014) (unpublished) (per curiam). The district court dismissed the state law claims brought almost seven months after § 8.01-243.2's one-year limitations period as time-barred. The Fourth Circuit affirmed. Likewise, in *Harris v. Commonwealth*, 2008 U.S. Dist. LEXIS 33834 (E.D. Va. Apr. 23, 2008), this Court dismissed state law claims brought by a pretrial detainee arising from an altercation with correctional officers for assault and battery, grossly negligent hiring and retention, and gross negligence. Where the plaintiff filed his complaint several months after the one-year limitations period ran, his state law claims were held time-barred under § 8.01-243.2. *See also Cashion v. Jacklee*, 2017 U.S. Dist. LEXIS 185749 (W.D. Va. Nov. 8, 2017) (dismissing state law claim related to regional jail's refusal to provide antipsychotic medication brought one and one-half months late); *Rivera v. D.O.C. Health Serv. Dir.*, 2016 U.S. Dist. LEXIS 128564 (W.D. Va. Sept. 21, 2016) (dismissing state law claims of negligence, intentional infliction of emotional distress, and abuse of process related to provision of medical care brought over a year after the one-year limitation period).

Here, Plaintiff alleges that Dr. Harris last saw him and denied his request for DAA medication on January 16, 2020. ECF No. 1 at ¶ 63. Again, Plaintiff does not date the involvement of Dr. Yancey and/or Ms. Duck-Triplett, but the claims against them are the same as against Dr. Harris and predicated upon a refusal/denial of treatment as of January 16, 2020. Therefore, under Virginia law, Plaintiff's causes of action against Dr. Yancey and Ms. Duck-Triplett for negligence, gross negligence, medical malfeasance, breach of contract, and intentional infliction of emotional distress accrued on January 16, 2021. *See* Va. Code Ann. § 8.01-230. Virginia Code § 8.01-230 establishes that the statute of limitations begins running "from the date the injury is sustained in

the case of injury to the person or damage to property." Under *Lucas v. Woody*, Plaintiff had until January 16, 2021, to file his state claims. S.E.2d 447, 450 (2014). Plaintiff, however, did not file his state claims until more than a year after the limitations period expired. Plaintiff's state law claims must be dismissed as they are untimely.

### B. Plaintiff's Constitutional Claims are Barred by the Doctrine of Qualified Immunity.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 781 (2011) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that the defendant's conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. *Saucier,* 533 U.S. at 206. If the Court determines that the facts alleged, taken in the light most favorable to the plaintiff, do not show that the officer's conduct violated a constitutional right, the defendant is entitled to summary judgment without further discussion of qualified immunity. *Id.* at 201. The Supreme Court holds that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, a court can "'skip ahead to the question whether the law clearly established that [these defendants'] conduct was unlawful in the circumstances of the case.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Thus, government or jail officials performing discretionary functions are entitled to qualified immunity from liability for civil damages and claims if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992).

To analyze qualified immunity, the court must identify, "at the appropriate level of specificity," the right the plaintiff asserts was infringed upon by the challenged conduct. *Wilson v. Layne,* 526 U.S. 603, 615 (1999); *see also Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir. 1996). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (per curiam); *City and Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 n. 3 (2015). Therefore, to determine whether a right is clearly established, it must be analyzed "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2016) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 1998 (2004) (per curiam) (internal quotation marks omitted).

The Supreme Court "has reiterated that for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Adams v. Ferguson*, 884 F.3d 219, 230 (4th Cir. 2018) (emphasis in original) (reversing the denial of qualified immunity to Virginia's behavioral health commissioner) (citing *Taylor v. Barkes*, 125 S.Ct. 2042, 2044 (2015) (internal citations omitted)). To determine if the law was clearly

9

established at the time of the alleged constitutional violation, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

"[I]n order to defeat a defendant's claim for qualified immunity, a plaintiff must show: (1) a violation of a constitutional right, which in the case of alleged deliberate indifference to serious medical needs requires a showing that (A) the alleged deprivation was sufficiently serious (the objective prong) and (B) prison officials acted with deliberate indifference (the subjective prong), which in turn requires a showing that the prison official (i) had actual knowledge of the risk of harm and (ii) recognized that his actions were insufficient to mitigate that risk of harm; and (2) that the constitutional right was clearly established at the time of the defendant's actions. If a plaintiff fails to satisfy either prong of the qualified-immunity test, the defendant is entitled to qualified immunity." *Pfaller v. Amonette*, 55 F.4th 436, 448 (4th Cir. 2022).

In *Pfaller,* the Fourth Circuit Court determined that a prison physician, who did not follow the VDOC Hepatitis C Guidelines, when he failed to refer the plaintiff for further screening or treatment based on his scores, was not entitled to qualified immunity. 55 F.4th 436, 448. The Court found that the plaintiff raised a genuine issue of material fact as to an Eighth Amendment violation as "it is undisputed that Dr. Wang knew Pfaller's blood results fell right near the line of warranting further screening. Yet, by his own account, he failed to check his guess about their meaning against the Guidelines, despite knowing the increasing risk of liver disease that higher scores denoted." *Id*. at 450. The Court also found that the physician "was on notice [that] failing to adequately respond to [the plaintiff's] signs of severe liver disease" could also be constitutionally deficient. *Id*. at 454. "As Pfaller's treating physician, Dr. Wang was on notice at

10

all relevant times—late 2015 through 2018—that he could not choose to delay or withhold treatment from Pfaller when he knew it was medically necessary and was, in fact, *mandated* by the very Guidelines he operated under." *Id.* at 453 (emphasis in original).

Here, Plaintiff's claims against Dr. Harris, and by extension Dr. Yancey and Ms. Duck-Triplett, are the inverse of the claims in *Pfaller*. Here, Plaintiff alleges he had the right to treatment with DAAs and by following the DCC Guidelines based on Plaintiff's FibroScan score, Dr. Yancey and Ms. Duck-Triplett were deliberately indifferent and violated Plaintiff's constitutional rights by not providing further care. According to the Plaintiff, the only allegations against Dr. Yancey and Ms. Duck-Triplett are that they passively followed the DCC Guidelines upon which Dr. Harris based his decision not to provide DAAs.

Plaintiff admits his FibroScan score was 4.0 and that under DCC Guidelines a score of 7.0 or higher was required for a treatment referral. ECF No. 1 at ¶¶ 45, 63. Plaintiff admits he was followed in the chronic care clinic for his Hepatitis C diagnosis after meeting with Dr. Harris, presumably to continue to monitor his condition should any further care or treatment be required. *Id.* at ¶ 57. Mr. Routon does not allege that Dr. Yancey or Ms. Duck-Triplett were involved in these medical or treatment decisions. Plaintiff also admits he did not have a diagnosis of fibrosis, cirrhosis, liver cancer, liver failure, or any other emergent conditions. *Id.* at ¶ 30. Under *Pfaller*, Plaintiff cannot establish that Dr. Yancey and/or Ms. Duck-Triplett had knowledge of a risk of harm, that they knew of Mr. Routon's medical condition, or that a reasonable medical provider in their positions would have known that they were violating Plaintiff's constitutional rights by adhering to the DCC Guidelines.

    **C.**    **The Deliberate Indifference Claims Against Dr. Yancey and Ms. Duck-Triplett Should Be Dismissed.**

11

The crux of Plaintiff's lawsuit is his belief that the Defendants denied him proper medical care for Hepatitis C. However, Mr. Routon fails to allege that he notified Dr. Yancey or Ms. Duck-Triplett about any of his medical concerns and fails to allege Dr. Yancey and Ms. Duck-Triplett knew of these concerns. Moreover, there are no allegations that Dr. Yancey or Ms. Duck-Triplett participated in any of Mr. Routon's medical care and treatment at DCC.

Overall, to establish liability under 42 U.S.C. § 1983, Plaintiff must show that Dr. Yancey and Ms. Duck-Triplett, acting under color of state law, violated Plaintiff's Eighth Amendment rights, and thereby injured him. *See* 42 U.S.C. § 1983; *Estelle v. Gamble*, 429 U.S. 97, 103-04, 97 (1976). It is well established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

A constitutional violation in the deliberate indifference context involves both an objective and a subjective component. The first, objective element, "is satisfied by a serious medical condition," while the second, subjective element, "is satisfied by showing deliberate indifference by prison officials." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met if the actor was "deliberately indifferent" such that she "[knew of] and disregard[ed] an excessive risk to [the] inmate['s] health or safety." *Farmer*, 511 U.S. at 837. Overall, to prove deliberate indifference, the plaintiff bears a heavy burden. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

For the "personal involvement" requirement, a plaintiff must "affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (*citing Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Therefore, the official's "own individual actions" must have "violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Mere knowledge of such a deprivation does not show personal involvement. *Wright*, 766 F.2d at 850. To establish such a claim, Plaintiff must show that Dr. Yancey and Ms. Duck-Triplett acted with "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Plaintiff fails to allege that Dr. Yancey and Ms. Duck-Triplett knew about his medical course; were consulted about his treatment; or made any clinical decisions regarding his care. Mr. Routon's Complaint fails to assert how, when, and in what capacity Dr. Yancey and Ms. Duck-Triplett participated in his medical care.

Here, the allegations in Plaintiff's Complaint cannot establish these elements against Dr. Yancey and Ms. Duck-Triplett. No assertions support the claim that Dr. Yancey and Ms. Duck-Triplett ever denied Mr. Routon access to medical treatment or that they were indifferent to any apparent medical need. Finally, there are no allegations that Dr. Yancey and Ms. Duck-Triplett even knew of Mr. Routon's alleged Hepatitis C diagnosis and/or were involved in any medical decisions for him. Mr. Routon provides no allegations against Dr. Yancey and Ms. Duck-Triplett of *any* conduct – much less conduct so grossly incompetent, inadequate, excessive as to shock the conscience. *Miltier*, 896 F.2d at 851. Therefore, these claims against Dr. Yancey and Ms. Duck-Triplett must be dismissed.

**D.    Plaintiff's State Law Claims are Barred by the Virginia Medical Malpractice Act.**

In the alternative, if Plaintiff's state claims are not barred by the statute of limitations, he cannot pursue those claims under the Virginia Medical Malpractice Act ("VMMA"), Virginia Code § 8.01-581.1, et seq. In Virginia, any personal injury action against a physician and/or a nurse must be brought as a medical malpractice action. Malpractice is defined in Virginia Code § 8.01-581.1 as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Health care is "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." Va. Code Ann. § 8.01-581.1. Thus, Plaintiff's state law claims against Dr. Yancey and Ms. Duck-Triplett of negligence, gross negligence, breach of contract, medical malfeasance, and intentional infliction of emotional distress all fall within the statutory definition of "medical malpractice," do not constitute constitutional violations and must be dismissed.

### E. The *Respondeat Superior* or Supervisory Liability Claims Should Be Dismissed.

To the extent Plaintiff attempts to hold Dr. Yancey and Ms. Duck-Triplett liable based entirely upon their roles in the medical department at DCC, these claims fail. Even assuming Dr. Yancey and/or Ms. Duck-Triplett held positions of authority, which Mr. Routon has not alleged, the only factual allegations against Dr. Yancey and Ms. Duck-Triplett are that they followed and/or implemented an improper Hepatitis C Guideline at DCC. ECF No. 1 at ¶¶ 80-82. Plaintiff does not allege that Dr. Yancey and/or Ms. Duck-Triplett had actual knowledge of Plaintiff's alleged condition or the need for DAA treatment. It would be impractical to allege that Dr. Yancey and Ms. Duck-Triplett would have had such personal knowledge when there are no allegations that they were even involved in Mr. Routon's care or treatment.

Furthermore, the law does not permit Plaintiff to hold Dr. Yancey and/or Ms. Duck-Triplett liable based on their roles in the medical department. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability"); *Orange v. Fielding*, 517 F. Supp. 2d 776, 790 (D.S.C. 2007) ("[V]icarious liability and *respondeat superior* are not applicable in § 1983 actions"); *Iqbal*, 556 U.S. at 676–77 (recognizing that "vicarious liability is inapplicable" in § 1983 suits and liability must be established "through the official's own individual actions"). Accordingly, the Court should dismiss with prejudice these claims against Dr. Yancey and Ms. Duck-Triplett.

Finally, to the extent Plaintiff attempts to assert a claim for supervisory liability under § 1983, Plaintiff has not plausibly alleged the requisite elements. The Fourth Circuit employs a well-established three prong test to establish a supervisory liability claim:

> [S]upervisory liability may attach under § 1983 if a plaintiff can establish three elements. These are: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

To establish the first prong requires "conduct [that] is widespread or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 799. The second prong also carries a high burden in that "a plaintiff [o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . .." *Randall*, 302 F.3d at 206 (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

15

Here, Plaintiff has not pled (and cannot plead) allegations sufficient to establish any such claims against Dr. Yancey or Ms. Duck-Triplett. Specifically, no allegations in the Complaint support any claims that Dr. Yancey and/or Ms. Duck-Triplett ever denied access to medical treatment, that they were ever providing care to Mr. Routon, or that they were indifferent to any apparent medical misconduct at DCC.

Plaintiff has not alleged any knowledge by Dr. Yancey and/or Ms. Duck-Triplett of "widespread" conduct necessary to fulfill the first element of a supervisory liability claim, much less knowledge of any conduct causing constitutional injury. Moreover, the allegations in the Complaint do not establish any deliberate indifference to such conduct by Dr. Yancey or Ms. Duck-Triplett, which would satisfy the second element of a supervisory liability claim. Finally, because the Complaint does not allege the first two elements, there is no plausible "causal link" between the alleged injuries and Dr. Yancey and/or Ms. Duck-Triplett. Thus, Plaintiff has alleged no facts that would meet the high burden to establish supervisory liability.

## V.   CONCLUSION

For the foregoing reasons, all claims against Dr. Yancey and Ms. Duck-Triplett should be dismissed. The Complaint should be dismissed with prejudice against them because Plaintiff presents no plausible facts or allegations to establish liability under these claims. *See Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming dismissal with prejudice under Fed. R. Civ. P. 12(b)(6) when "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").

Date:  July 20, 2023

Respectfully submitted,

**CANDACE DUCK-TRIPLETT, LPN**
**ERIC YANCEY, MD**


/s/ Katherine E. Morley
Taylor D. Brewer (VSB No. 82041)
Katherine E. Morley (VSB No. 94898)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
tbrewer@moranreevesconn.com
kmorley@moranreevesconn.com
*Counsel for Armor, Yancey, Triplett, Schnur, and Harris*

17

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 20th day of July, 2023, I electronically filed the foregoing pleading using the CM/ECF System, which will send notifications of the filing to all counsel of record.

Henry Eric Routon
0005146
5885 W. River Rd
Salem, VA 24153
*Pro Se Plaintiff*

Margaret Hoehl O'Shea
Office of the Attorney General (Richmond)
202 North 9th Street
Richmond, VA 23219
(804) 225-2206
Fax: (804) 786-4239
Email: moshea@oag.state.va.us
*Counsel for Defendant Herrick, Brennan, Waiters,*
*Tammy Williams, and Warden of Deerfield Correctional Center*

                                  /s/ Katherine E. Morley
                                  Taylor D. Brewer (VSB No. 82041)
                                  Katherine E. Morley (VSB No. 94898)
                                  MORAN REEVES & CONN PC
                                  1211 E. Cary Street
                                  Richmond, Virginia 23219
                                  Telephone: (804) 421-6250
                                  Facsimile: (804) 421-6251
                                  tbrewer@moranreevesconn.com
                                  kmorley@moranreevesconn.com
                                  *Counsel for Armor, Yancey, Triplett, Schnur, and Harris*